UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDELL MCFADDEN,

      Petitioner,

v.                            Case No:   2:14-cv-128-FtM-38MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

      Respondents.[1]

_____/

## OPINION AND ORDER[2]

      This matter comes before the Court upon a *pro se* petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Lindell McFadden ("Petitioner") (Doc. 1; filed March 6, 2014).   Petitioner, a prisoner of the Florida Department of Corrections, attacks the convictions entered by the Twentieth Judicial Circuit Court in and for Collier County, Florida for fourteen separate drug-related offenses (Doc. 1 at 1).   Respondents filed a

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004) (citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

response to the petition (Doc. 14).   Petitioner filed a reply (Doc. 18), and the petition is now ripe for review.

Petitioner raises eight claims in his petition.   Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.   Because the petition may be resolved on the basis of the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background

On December 21, 2007, the state charged Petitioner by amended information with sixteen felony drug offenses (Ex. 1).[3]   This included three counts of trafficking in oxycodone (Counts One, Three, and Twelve); one count of trafficking in hydrocodone (Count Two); one count of possession of a controlled substance with intent (Count Four); five counts of possession of cocaine with intent to sell (Counts Five, Seven, Nine, Thirteen, and Fifteen); five counts of the sale or delivery of cocaine (Counts Six, Eight, Ten, Fourteen, and Sixteen); and one count of the sale or delivery of oxycodone (Count Eleven). *Id.*   Prior to trial, defense counsel filed a motion to compel the disclosure of a confidential informant and a motion to dismiss based on objective entrapment (Ex. 2; Ex. 3).   After holding an evidentiary hearing on the motions, both were denied (Ex. 4).

A jury found Petitioner guilty of fourteen felony offenses (Ex. 5).   The trial court sentenced him to twenty years in prison with a fifteen-year minimum mandatory term (Ex.

---

[3] Unless indicated otherwise, citations to exhibits are to those filed by Respondent on September 8, 2014 (Doc. 15).

7).  Florida's Second District Court of Appeal affirmed Petitioner's conviction (Ex. 10); *McFadden v. State*, 61 So. 3d 1125 (Fla. 2d DCA 2011).

On October 28, 2011, Petitioner filed a state petition for habeas corpus relief raising claims of ineffective assistance of appellate counsel (Ex. 11).   The petition was denied by the appellate court on April 26, 2012 (Ex. 14).

On May 11, 2012, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion"), raising five claims of ineffective assistance of counsel (Ex. 17).   The post-conviction court denied the motion in a written order (Ex. 20).   Florida's Second District Court of Appeal affirmed (Ex. 22); *McFadden v. State*, 124 So. 3d 237 (Fla. 2d DCA 2013).

Petitioner filed the instant petition in this Court on March 3, 2014 (Doc. 1).

## II.    Governing Legal Principles

### A.    Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state

court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but

applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1*)*; *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

## B.   Standard for Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must

establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The foregoing analysis also applies to claims of ineffective assistance of appellate counsel. "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." *Shere v. Sec'y, Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008) (citing *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000)).

### C.     Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been

denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

### III.   Analysis

Petitioner raises eight separate claims in his petition.   He asserts that: (1) the trial court erred by rejecting his objective entrapment defense; (2) appellate counsel was ineffective for failing to argue, as fundamental error, that Petitioner was convicted of nonexistent crimes; (3) appellate counsel was ineffective for failing to argue, as fundamental error, that the trial court instructed the jury on crimes not charged; (4) appellate counsel was ineffective for failing to argue, as fundamental error, that the trial court failed to instruct the jury on Counts Three, Five, Seven, Eight, Nine, Ten, Twelve, and Sixteen of the amended information; (5) trial counsel was ineffective for failing to object to the trial court's failure to comply with Rule 3.410 of the Florida Rules of Criminal Procedure; (6) trial counsel was ineffective for failing to object to Petitioner being convicted of nonexistent crimes; (7) trial counsel was ineffective for failing to object to the trial court's instructions on crimes not charged; and (8) trial counsel was ineffective for failing to object to the trial court's failure to instruct the jury on Counts Three, Five, Seven, Eight, Nine, Ten, Twelve, and Sixteen of the amended complaint (Doc. 1 at 4-12).   Each of these claims will be addressed separately.

### A.   Claim One

Petitioner alleges that the state court erred by rejecting his objective entrapment defense (Doc. 1 at 4-5).   Specifically, he claims that the state acted outrageously when law enforcement "enticed a woman familiar to Petitioner to engage in sexual activities with him in an effort to convince him to sell drugs" to an undercover officer. *Id.* at 4. Petitioner raised this claim on direct appeal, and Florida's Second District Court of Appeal denied it without a written opinion (Ex. 10).

Petitioner's brief on direct appeal raised this claim in terms of state law only (Ex. 8). Specifically, Petitioner argued that objective entrapment "is to be evaluated under the due process provision of Article I, Section 9, of the Florida Constitution." (Ex. 8 at 11) (citing *Jimenez v. State*, 993 So. 2d 553, 554-55 (Fla. 2d DCA 2008)).[4] Petitioner's failure to apprise the state courts of the constitutional nature of this claim leaves it unexhausted on federal habeas review. 28 U.S.C. § 2254(b)(1). For a habeas petitioner to fairly present a federal claim to state courts:

> It is not sufficient merely that the federal habeas petitioner has been through the state courts . . . nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made. Rather, in order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.

*McNair v. Campbell*, 416 F.3d 1291, 1302–03 (11th Cir. 2005) (emphasis added) (internal citations and quotations omitted). As part of such a showing, the claim presented to the state courts "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Reedman v. Thomas*, 305 F. App'x 544, 545 (11th Cir. 2008) (internal citation omitted). Because Petitioner did not refer to any "specific federal constitutional guarantee" in his brief on direct appeal, his

---

[4] To the extent Petitioner asserts that the post-conviction court erred under Florida law when it denied Claim One, his argument is not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

current due process challenge to the state court's denial of Claim One is unexhausted. Petitioner does not satisfy (or even allege) the cause and prejudice, or fundamental miscarriage of justice exceptions to overcome the procedural default of this claim. Consequently, Claim One is due to be dismissed.

Even assuming *arguendo* that Petitioner raises a properly pleaded and exhausted federal due process claim, it is without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").   He points to no clearly established law indicating that he had a constitutional right to dismissal of his case based upon objective entrapment, and an independent review of relevant United States Supreme Court cases suggests that under federal law, he had no such right.

The United States Supreme Court first recognized an entrapment defense in *Sorrells v. United States*, 287 U.S. 435 (1932).   In so doing, the Court resolved a split of authority as to whether the focus of the entrapment defense was "objective" (looking to the government's conduct), or "subjective" (looking to the defendant's predisposition). The Supreme Court, held that a "defendant [who] seeks acquittal by reason of entrapment[,] . . . cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue." *Id.* at 451.   Accordingly, the Court disavowed the defense of "objective entrapment," concluding that it was the defendant's predisposition, not law enforcement's conduct, at issue in an entrapment defense. *Id.* at 451.   Twenty-six years later, the Supreme Court reiterated that entrapment was the "line . . . between the trap for the unwary *innocent* and the trap for

the unwary *criminal*." *Sherman v. United States*, 356 U.S. 369, 372 (1958) (emphasis added).

The Supreme Court rejected an invitation to revitalize an objective entrapment defense in *United States v. Russell*, 411 U.S. 423 (1973). In this case, Russell argued that the government's involvement in creating his crime was so great "that a criminal prosecution for the [crime] violates the fundamental principles of due process." *Russell*, 411 U.S. at 430.[5] The Supreme Court disagreed that the objective entrapment defense had a constitutional foundation:

> [E]ntrapment is a relatively limited defense. It is rooted, not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law enforcement,' but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a proscribed offense but was induced to commit them by the Government.

*Id.* at 435. The Supreme Court concluded that "the defense of entrapment . . . was not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve." *Russell*, 411 U.S. at 435.

To this point, therefore, it was absolutely clear under Supreme Court precedent that a defendant who had a predisposition to commit a particular crime could not defend against prosecution on the basis that the government induced him to commit that crime, no matter how strong the inducement or "outrageous" the government's conduct.

---

[5] Russell reasoned that, just as with the exclusionary rule created in *Weeks v. United States*, 232 U.S. 383 (1914), and *Mapp v. Ohio*, 367 U.S. 643 (1961), dismissal was an appropriate means of deterring future police misconduct. The Court rejected the defendant's analogy to *Weeks* and *Mapp* on the ground that, unlike the Fourth Amendment violations in those cases, "the Government's conduct here violated no independent constitutional right of the respondent." *Russell*, 411 U.S. at 430.

However, the *Russell* Court went on to note in dicta that:

> While we may someday be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, cf. *Rochin v. California*, 342 U.S. 165 [72 S. Ct. 205, 96 L. Ed. 183] (1952), the instant case is distinctly not of that breed. . . . The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment.

*Russell*, 411 U.S. at 431-32 (J. Rehnquist).    Three years after *Russell*, Justice Rehnquist, writing the plurality opinion, attempted to clarify *Russell*'s "due process" statement by urging that "[t]he limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant".   Otherwise, "[i]f the police engage in illegal activity in concert with a defendant beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police[.]" *Hampton v. United States*, 425 U.S. 484, 490 (1976).[6]

Petitioner cannot now rely on the dicta in *Russell* or *Hampton* to support his assertion that the trial court violated his federal due process rights by rejecting his "objective entrapment" defense. *See White*, 134 S. Ct at 1702 (limiting the AEDPA's concept of "clearly established law" to include only "the holdings, as opposed to the dicta[,]" of its decisions).   This Court's inquiry on habeas review is constrained by the AEDPA, and in the circumstances here, the state court's decision to deny Petitioner's

---

[6] Like his comment in *Russell*, Justice Rehnquist's statement in *Hampton* was dicta. Notably, in *Hampton*, five Justices, two in dicta and three in dissent, left open the "objective" defense door that was unlocked in *Russell*'s dicta.

motion to dismiss the charges against him based on objective entrapment was not contrary to clearly established federal law "as determined by the Supreme Court of the United States."[7] 28 U.S.C. § 2254(d)(1).   This conclusion is supported by the fact that neither the Supreme Court, nor the Eleventh Circuit, has ever found a violation of due process based on the government's outrageous conduct. *See Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 35 (11th Cir. 2012) ("It is well-settled that the defense of entrapment is not of constitutional dimension.") (citing *Russell*); *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct defense and have discussed it only in dicta."); *United States v. Ciszkowski*, 492 F.3d 1264, 1272 (11th Cir. 2007) (Carnes, J., concurring) (describing the outrageous government conduct doctrine as rooted in "speculative dicta" and noting that we have never "reversed a conviction or vacated a sentence on th[is] basis").

In addition to being unexhausted, Claim One is denied on the merits.

## B.    Claims Two and Six

In Claim Two, Petitioner asserts that appellate counsel was ineffective for failing to raise, as fundamental error, a claim that Petitioner was convicted of crimes that do not exist (Doc. 1 at 5).   Specifically, he argues that, in Count Four of the amended information, he was charged with possession with intent to sell or deliver oxycodone, but the verdict form reflected a conviction for possession of a controlled substance with intent

---

[7] Although the trial court did not dismiss the charges against Petitioner based on entrapment, Counsel was allowed to argue as an affirmative defense, and did argue at trial, that Petitioner was entrapped into selling drugs to the undercover agent (T. at 397-404).   In addition, the jury was instructed on the defense of entrapment. *Id.* at 419-21. Nevertheless, the jury found Petitioner guilty of a lesser-included offense in Count One and guilty as charged on all other counts. *Id.* at 448-50.

to sell or deliver and does not state that oxycodone was the particular controlled substance at issue.   He asserts that, in Count Eleven of the amended complaint, he was charged with selling or delivering oxycodone, but the verdict form reflected a conviction for sale or delivery of a controlled substance; again without identifying oxycodone as the controlled substance at issue.[8]   Accordingly, Petitioner argues that appellate counsel should have argued on direct appeal that it was fundamental error for the verdict form not to identify the controlled substance at issue in Counts Four and Eleven of the amended information.   In Claim Six, Petitioner asserts that trial counsel was ineffective for failing to object to the verdict form as it relates to Counts Four and Eleven. *Id.* at 11.

Petitioner raised Claim Two in his state habeas petition (Ex. 11), where it was rejected by Florida's Second District Court of Appeal without a written opinion (Ex. 14). He raised Claim Six in his Rule 3.850 motion (Ex. 17) where it was rejected by the post-conviction court (Ex. 20).   The rejection of Claim Six was affirmed by Florida's Second District Court of Appeal (Ex. 22).   Petitioner does not explain how the state courts' rejections of these claims were contrary to, or based upon unreasonable applications of, *Strickland*.   Nor does he urge that the rejections were based upon an unreasonable determination of the facts.   Rather, he merely restates the same claims raised in state

---

[8] Petitioner understates the charges described in the amended information (Ex. 1).   In Count Four of the amended information, Petitioner is charged with "Possession of Controlled Substance W/Intent, F.S. 893.13(1)(a) Second Degree Felony." (Ex. 1 at 1). In Count Eleven of the amended information, Petitioner is charged with "Sale or Delivery Of Controlled Substance, F.S. 893.13(1)(a), Second Degree Felony." *Id.*   These are the counts listed on the verdict form.   On the second page of the amended information, it is clarified that the controlled substance it issue in both counts was oxycodone. *Id.* at 2.

court.   A review of the record and applicable law supports the state courts' rejections of

Claims Two and Six.

The jury was correctly instructed at trial on the elements of both Counts Four and

Eleven.   In Count Four, the amended information charged Petitioner with possession of

a controlled substance with intent, and noted that "[o]n or about November 03, 2006 in

Collier County, Florida, [Petitioner] did unlawfully possess, with the intent to sell or deliver,

a controlled substance, to-wit: oxycodone[.]" (Ex. 1).   The trial court instructed on Count

Four as follows:

> To prove the crime of possession of oxycodone with intent to
> sell or deliver the State must prove the following three
> elements beyond a reasonable doubt:
>
> Lindell McFadden possessed with intent to sell or possessed
> with intent to deliver a certain substance; the substance was
> oxycodone, and three, Lindell McFadden had knowledge of
> the presence of the substance.

(T. at 411).   In Count Eleven of the amended information, Petitioner was charged with

the sale or delivery of a controlled substance, and it was alleged that Petitioner "did

unlawfully sell or deliver a controlled substance, to-wit, oxycodone." (Ex. 1 at 1-2).   The

trial court instructed on Count Eleven as follows:

> To prove the crime of the sale or delivery of oxycodone the
> State must prove the following two elements beyond a
> reasonable doubt:   Lindell McFadden sold or delivered a
> certain substance; the substance was oxycodone.

(T. at 414).   The jury was provided a written copy of the jury instructions to take to the

jury room. *Id.* at 407.   Notably, although the jury form did not specifically identify the

controlled substance at issue in Counts Four and Eleven, the jury verdict form referenced

the charging instrument by count, and the charging instrument identified the controlled

substance at issue as oxycodone (Ex. 6; Ex. 1).   Given that the jury was properly

instructed and given that the verdict form cross-referenced the amended information, reasonable trial counsel could have decided against objecting to the verdict form. Accordingly, Petitioner has not satisfied *Strickland*'s performance prong on Claim Six, and it must be denied. *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988) ("To prove ineffective assistance of counsel [for failing to object to a jury instruction], [a petitioner] must show that the instruction was improper, that a reasonably competent attorney would have objected to the instruction, and the failure to object was prejudicial.").

As to appellate counsel, under Florida law, "[i]nstructions [to the jury] are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred." *State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991).   For a jury instruction to constitute fundamental error, the error must "reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Delva*, 575 So. 2d at 644-45. Furthermore, fundamental error occurs only when the defective instruction is material to what the jury must consider in order to convict; in other words, "[f]ailing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error." *Id.* at 645.

As noted, the jury was properly instructed on the elements of Counts Four and Eleven; Petitioner does not argue otherwise.   A jury is presumed to follow the instructions given to it. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).   To the extent Petitioner now argues that the verdict form was defective because it should have listed the precise controlled substance he is alleged to have possessed and sold (oxycodone), the record

does not reflect that the type of controlled substance was at issue in these counts.[9] Because there was no dispute as to the type of controlled substance at issue in Counts Four and Eleven, reasonable appellate counsel could have decided against raising this as an issue of fundamental error at trial—particularly since the verdict form referenced the amended information which specified the type of controlled substance at issue. Accordingly, the state court's rejection of Claim Two was neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.

Both Claims Two and Six are denied pursuant to 28 U.S.C. § 2254 (d).

### C.    Claims Three and Seven

In Claim Three, Petitioner argues that appellate counsel was ineffective for failing to argue, as fundamental error, that the trial court instructed the jury on crimes not charged (Doc. 1 at 6).   Specifically, he asserts that the jury was improperly instructed on the crimes of sale or delivery of hydrocodone, simple possession of oxycodone, and simple possession of cocaine, because he was never charged with those offenses. *Id.* In Claim Seven, Petitioner asserts that trial counsel was ineffective for failing to object to the instructions on these crimes. *Id.* at 10-11.

Petitioner raised Claim Three in his state habeas petition (Ex. 11), and it was rejected by Florida's Second District Court of Appeal without a written opinion (Ex. 14). Petitioner raised Claim Seven in his Rule 3.850 motion (Ex. 17) where it was rejected by the post-conviction court (Ex. 20).   The rejection of Claim Six was affirmed by Florida's Second District Court of Appeal (Ex. 22).   Petitioner does not explain how the state

---

[9] Neither the type of drug involved nor Petitioner's identity as the supplier of the drugs were at issue.   Rather, the defense focused on whether Petitioner had been entrapped into selling his prescription medication.

courts' rejections of these claims were contrary to, or based upon unreasonable applications of, *Strickland*.   Nor does he urge that the rejections were based upon an unreasonable determination of the facts.   Rather, he merely restates the same claims raised in state court.   A review of the record and applicable law supports the state court's rejections of Claims Three and Seven.

In Florida, a trial court is required to instruct the jury on all necessary lesser included offenses. *State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010).   An offense is a necessary lesser included offense if the elements of the lesser offense are subsumed within the elements of the charged offense. *Sanders v. State*, 944 So. 2d 203 (Fla. 2006). In Counts Four, Five, Seven, and Eight of the amended information, Petitioner was charged with possession with intent to sell oxycodone and possession with intent to sell cocaine (Ex. 1).   Florida courts have been clear that "the crime of possession of any drug is an offense that is fully subsumed within the elements of the crime of possession of the drug with intent to sell." *Ewing v. State*, 56 So. 3d 67, 69 (Fla. 2d DCA 2011); *Wilcox v. State*, 675 So. 2d 1043, 1043 (Fla. 4th DCA 1996) ("Patently, one cannot be convicted of possession with intent to sell under section 893.13(1)(a) if all the elements of possession are not met."); *Johnson v. State*, 570 So. 2d 1158, 1158 (Fla. 5th DCA 1990) (the defendant was entitled to an instruction on simple possession as a lesser-included offense of the unlawful sale, delivery, or possession of a controlled substance with intent to sell or deliver).   Therefore, the trial court properly instructed the jury on the lesser included offenses of simple possession of oxycodone and cocaine.

Likewise, permissive lesser-included offenses are those that may or may not be lesser included offenses depending on the pleadings and the evidence presented. *Wilcott*

*v. State*, 509 So. 2d 261, 262 (Fla. 1987).   An instruction on a permissive lesser included offense is precluded only where "there is a total lack of evidence of the lesser offense." *In re Use by Trial Courts of Standard Jury Instructions*, 431 So. 2d 594, 597 (Fla.), modified, 431 So. 2d 599 (Fla.1981); *Amado v. State*, 585 So. 2d 282, 282-83 (Fla. 1991). In Count Two, Petitioner was charged with trafficking in hydrocodone (Ex. 1).   In addition to instructing the jury on trafficking, the trial court also instructed the jury on the sale or delivery of hydrocodone, and it appeared on the verdict form as a lesser-included offense of Count Two (T. at 417; Ex. 6).   The sale or delivery of a controlled substance is a permissive lesser included offense of trafficking in a controlled substance. *See* Fla. Std. J. I. 25.11 (Trafficking in Illegal Drugs).   At trial, the undercover officer testified that she purchased twenty hydrocodone pills from Petitioner on December 12, 2006. Accordingly, there was not a "total lack of evidence" that Petitioner sold hydrocodone, and it was not error for the jury to be instructed on this lesser-included charge.

Because the trial court did not err by instructing the jury on the lesser included charges of the sale or delivery of hydrocodone, and simple possession of oxycodone and cocaine, neither trial counsel nor appellate counsel had any grounds on which to object to the instructions.   Therefore, the state courts' rejections of Claims Three and Seven were neither contrary to *Strickland* nor based upon an unreasonable determination of the facts.   These claims are denied pursuant to 28 U.S.C. § 2254(d).

### D.     Claims Four and Eight

In Claim Four, Petitioner asserts that appellate counsel was ineffective for failing to argue, as fundamental error, that the trial court neglected to instruct the jury on Counts Three, Five, Seven, Eight, Nine, Ten, Twelve, and Sixteen of the amended information

(Doc. 1 at 7-8).   In Claim Eight, Petitioner asserts that trial counsel was ineffective for failing to object to the trial court's failure to instruct the jury on Counts Three, Five, Seven, Eight, Nine, Ten, Twelve, and Sixteen of the amended information. *Id.* at 11-12.

Petitioner raised Claim Four in his state habeas petition (Ex. 11), and it was rejected by Florida's Second District Court of Appeal without a written opinion (Ex. 14). Petitioner raised Claim Eight in his Rule 3.850 motion (Ex. 17) where it was rejected by the post-conviction court (Ex. 20).   The rejection of Claim Eight was affirmed by Florida's Second District Court of Appeal (Ex. 22).   Petitioner does not explain how the state courts' rejections of these claims were contrary to, or based upon unreasonable applications of, *Strickland*.   Nor does he urge that the rejections were based upon an unreasonable determination of the facts.   Rather, he merely restates the same claims raised in state court.   A review of the record and applicable law supports the state courts' rejections of Claims Four and Eight.

Petitioner was charged with three counts of trafficking in oxycodone (Counts One, Three, and Twelve) (Ex. 1).   The jury was instructed on the crime of trafficking in oxycodone (T. at 408).   Petitioner was charged with four counts of possession of cocaine with intent to sell or deliver (Counts Five, Seven, Nine, and Fifteen) (Ex. 1).   The jury was instructed on the crime of possession of cocaine with intent to sell or deliver (T. at 412-13).   Petitioner was charged with four counts of sale or delivery of cocaine (Counts Six, Eight, Ten, and Sixteen) (Ex. 1).   The jury was instructed on the crime of sale or delivery of cocaine (T. at 413).     The jury was provided with a written copy of the jury instructions. *Id.* at 407.     Because the trial court properly instructed the jury on each crime with which Petitioner was charged, reasonable trial counsel could have decided against objecting to

the trial court's failure to repeat the identical instruction for each separate count of the amended information. Thus, trial counsel's lack of objection was not deficient performance. Likewise, appellate counsel had no grounds on which to argue that fundamental error occurred when the trial court did not repeat instructions already provided to the jury. The state courts' rejections of Claims Four and Eight were neither contrary to *Strickland* nor based upon an unreasonable determination of the facts. These claims are denied pursuant to 28 U.S.C. § 2254(d).

### E.    Claim Five

Petitioner argues that trial counsel was ineffective for not objecting when the trial court failed to adhere to Rule 3.410 of the Florida Rules of Criminal Procedure (Doc. 1 at 8).[10] In his Rule 3.850 motion, Petitioner directed the post-conviction court's attention to a portion of the trial transcript in which the trial court called both trial counsel and the

---

[10] Under this rule:

> If, after they have retired to consider their verdict, jurors request additional instructions or to have any testimony read or played back to them they may be conducted into the courtroom by the officer who has them in charge and the court may give them the additional instructions or may order the testimony read or played back to them. The instructions shall be given and the testimony presented only after notice to the prosecuting attorney and to counsel for the defendant. All testimony read or played back must be done in open court in the presence of all parties. In its discretion, the court may respond in writing to the inquiry without having the jury brought before the court, provided the parties have received the opportunity to place objections on the record and both the inquiry and response are made part of the record.

Fla. R. Crim. P. 3.140(a).

assistant state attorney back to the courtroom due to a jury question (T. at 439-41).   The

following exchange occurred:

|  |  |
|---|---|
| COURT: | We have a question and that's what I needed to bring you all back for.   The question is as follows: |
|  | Does entrapment apply to one offense or all offenses? |
|  | That's the jury question.   I'll reread that in front of them.   And then I'm going to tell them they have the instructions and I read the instructions. So that's as good as it's going to get. |
| STATE: | Okay. |
| COURT: | Let's bring [the jury] in. |
|  | . . . |
| COURT: | All right, everyone can be seated.   All our jurors are back. |
|  | Okay, we had a question from the jury: |
|  | Does entrapment apply to one offense or all offenses? |
|  | Is that the question we have? |
|  | Okay, ladies and gentlemen, you all heard my instructions and you all have a copy of them. That's what my response is, all right? |

(T. at 441-42).   It is unclear why Petitioner urges that this exchange shows that the trial

court did not comply with Rule 3.140.   Nothing in the record indicates that trial counsel

did not have an opportunity to object to the court's instruction; rather, it appears that trial

counsel merely chose not to do so.   An omission, standing alone, is meaningless under

*Strickland*.   What matters is the reasonableness of the omission, which turns, "on the

facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466

U.S. at 690.   Petitioner provides no grounds on which trial counsel could have objected to the trial court's conduct and offers no suggestion as to how the court should have answered the jury's question.   Petitioner also does not show how he was prejudiced from trial counsel's silence.   As such, he is asking us to speculate about trial counsel's motives and any resulting prejudice; an exercise forbidden by *Strickland.*   Petitioner has not demonstrated that the state courts' adjudication of Claim Five was contrary to *Strickland* or based upon an unreasonable determination of the facts.   Petitioner is not entitled to relief on Claim Five. 28 U.S.C. § 2254(d). *See Debruce v. Commissioner, Ala. Dep't of Corr.*, 758 F.3d 1263, 1296 (11th Cir. 2014) ("Here, we cannot say the attorneys acted unreasonably because we do not know anything, one way or the other, about their reasoning.").

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[11]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the

---

[11]   Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.*   As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El v. Cockrell*, 537 U.S. 322, 335–36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

### V.    Conclusion

Based on the reasons set forth in this Order, Petitioner's 28 U.S.C. § 2254 petition is **DENIED with prejudice**. Petitioner is denied a certificate of appealability. The Florida Attorney General is dismissed from this action. The **Clerk of Court** is directed to terminate any pending motions, close the file, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on this 18th day of November, 2016.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Lindell McFadden
Counsel of Record